THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY CALHOUN, and<br>TANYA CALHOUN<br>       Plaintiffs<br><br>       v.<br><br>STEPHEN VAN LOON, and<br>NEW PRIME, INC.<br><br>       Defendants | :<br>:<br>:<br>:<br>:   3:12-CV-458<br>:   (JUDGE MARIANI)<br>:<br>:<br>:<br>: |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a motion for partial summary judgment filed by Defendants Stephen Van Loon and New Prime, Inc. d/b/a Prime, Inc. (hereinafter "New Prime"). (Doc. 35). Plaintiffs, Henry and Tanya Calhoun, filed this action to recover damages as a result of an accident wherein Stephen Van Loon, while operating his tractor-trailer, backed into Henry Calhoun's tractor-trailer, causing injury to Mr. Calhoun. (Pl. Am. Comp., Doc. 10, at ¶¶ 7, 9, 10).

For the reasons set forth below, summary judgment will be entered in favor of Defendants Stephen Van Loon and New Prime, Inc. with respect to Counts II, III, and IV.

### II. Statement of Undisputed Facts

On June 21, 2011, at approximately 5:00 a.m., Stephen Van Loon, while backing his tractor-trailer into a parking place in the Good Humor parking lot in Hazelton, PA, collided with Henry Calhoun's parked tractor trailer. (Defs. Stat. of Undisp. Facts, Doc. 41, ¶¶ 2, 4).

Defendants admit that Van Loon "was acting within the furtherance of business of New Prime, Inc." at the time of this accident. (*Id.* at ¶ 11). As a result, Plaintiffs allege that Defendants caused them injuries and damages due to Van Loon's "negligent, careless, gross, wanton and reckless conduct", which Plaintiffs also attribute to New Prime as Van Loon's employer. (*Id.* at ¶¶ 7-8). Plaintiffs further allege that New Prime is liable due to its "negligen[ce] in hiring, retention, supervising, training, and entrusting Van Loon with a tractor-trailer." (*Id.* at ¶ 9).

Plaintiffs filed this action on February 24, 2012, in the Court of Common Pleas of Luzerne County and Defendants removed the case to the District Court for the Middle District of Pennsylvania on March 13, 2012. (Doc. 1). Plaintiffs subsequently filed an Amended Complaint on May 22, 2012. (Doc. 10). Plaintiffs allege Negligence by Van Loon (Count I), Negligence by New Prime (Count II), Punitive Damages against Van Loon (Count III), Punitive Damages against New Prime (Count IV), Loss of Consortium by Van Loon (Count V), and Loss of Consortium by New Prime (Count VI). (*Id.*).

The defendants now move for summary judgment on Counts II, III, and IV.

### III. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S. Ct. 1262, 122 L.Ed.2d 659 (1993).

### IV. Statement of Disputed Facts

In accordance with the summary judgment standards explained in Section III, *supra*, for the reasons discussed below, and drawing all reasonable inferences in favor of Plaintiffs, no genuine issues of material fact exist with respect to Counts II, III, and IV.

## A. Punitive Damages - Counts III and IV

In Pennsylvania, punitive damages "are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." *SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 705 (Pa. 1991) (quoting *Chambers v. Montgomery*, 192 A.2d 355, 358 (1963)). See also *Feld v. Merriam*, 485 A.2d 742, 747-748 (Pa. 1984):

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Punitive damages must be based on conduct which is "malicious," "wanton," "reckless," "willful," or "oppressive." Further, one must look to the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties. The state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious. (Internal citations omitted).

As such, punitive damages "are not justified where the defendant's mental state rises to no more than gross negligence." *SHV Coal*, 587 A.2d at 705. Further, to succeed on a claim for punitive damages, a plaintiff must produce sufficient evidence to establish that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).

Given that "Pennsylvania cases have adopted a very strict interpretation of 'reckless indifference to the rights of others,'" *Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir. 1990), and that "punitive damages are an 'extreme remedy' available in only the most exceptional matters," *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005), Plaintiffs have a heavy

4

burden to defeat Defendants' motion for summary judgment on Counts III and IV. Here, Van Loon admitted that he "should have gotten out and looked and made sure that that was an empty space instead of one occupied", and that exiting the truck and looking prior to backing up is a company requirement. (Dep. of Stephen Van Loon, Doc. 37-1, Ex. A, at 25). Van Loon also admitted that he had previously "backed into another vehicle" because "instead of getting out and checking like [he] should have, [he] just eased back into that car" and that because he had been "making some mistakes for a while", the company "decided to call [him] in for some training." (Id. at 24). He further stated that he has had a least one other accident since the June 2011 incident. (Id. at 25)

Nonetheless, Van Loon also testified that, at the time of the accident, it was raining, there was a hill in the background "to make it even worse," and that "it was pretty dark". (Id. at 13, 15). Additionally, Van Loon claims that he was going three miles an hour while backing up. (Id. at 13). Plaintiffs do not appear to dispute Van Loon's contention regarding the weather on the morning in question or his speed prior to hitting Calhoun's tractor-trailer. Instead, Plaintiffs argue that pursuant to the testimony of Edward Bernadyn, the operations manager at the facility where the accident occurred, "the area where the accident occurred 'had lighting' . . . [and] was sufficiently well-lit to see trucks even with their lights off." (Pls. Brief in Opp., Doc. 37, at 9 (citing Dep. of Edward Bernadyn, Doc. 37-1, Ex. B, at 17)). We disagree with Defendants' assertion that "evidence of the lighting conditions are immaterial" because "Defendants admit that Van Loon breached his duty of care to plaintiff at the time

5

of the June 21, 2011 accident" (Defs. Reply Brief, Doc. 42, at 3). However, Defendants are correct that disagreement as to the extent of lighting in the parking lot does not create an issue that could materially affect a jury's decision as to whether Van Loon's conduct was sufficiently reckless such that it could be found that he had a subjective appreciation of the risk of harm and that he acted, or failed to act, in conscious disregard of that risk. See Hutchinson, 870 A.2d at 772.

The Third Circuit has recognized that a district court may determine punitive damage claims on summary judgment. *Vitalis v. Sun Constructors, Inc.*, 481 Fed.Appx. 718, 729 (3d Cir. 2012) (citing *Pichler v. UNITE*, 542 F.3d 380, 387 (3d Cir. 2008) ("If, on remand, the District Court determines that summary judgment is appropriate as to plaintiffs' punitive damages claim, then a trial will be unnecessary"); *Cochetti v. Desmond*, 572 F.2d 102, 103 (3d Cir. 1978) ("to the claim for punitive damages, we conclude that on the record before the district court summary judgment was proper")). The undisputed facts, specifically including that Van Loon had been involved, and has continued to be involved since June 2011, in several accidents, and that Van Loon knew he broke the company rules in not exiting the vehicle and checking behind him prior to backing up, are insufficient to raise a question of fact as to whether Van Loon acted outrageously and in conscious disregard of the risks of his conduct. Here, it is clear, even when drawing all inferences in the light most favorable to Plaintiffs, that Van Loon's actions fail to amount to more than gross negligence.

Similarly, there are no genuine issues of material fact with respect to New Prime. Plaintiffs contend that a question of fact exists "as to whether Defendant New Prime, Inc., ignored a known risk in sending Van Loon out on the road." (Doc. 37, at 9). In support of this argument, Plaintiffs rely on the testimony of Donald Lacy, safety director for New Prime, who stated that not getting out of the vehicle and looking is a safety violation and that "we would bring the person back for additional training" if a driver has a safety violation. (Dep. of Donald Lacy, Doc. 37-1, Ex. C, at 16-17; Doc. 37, at 9). The Calhouns contend that "Van Loon received no such additional training and was not removed from employment . . . [and that] Lacy . . . was not even aware of the safety violations." (Doc. 37, at 9-10). Defendants seemingly do not dispute that Van Loon's conduct was in violation of the company's safety requirements or that New Prime requires drivers to attend additional training when such rules are violated.[1] However, Plaintiffs offer no evidence or testimony as to their contention that Van Loon did not receive any additional training. Indeed, Van Loon testified that after his first accident, wherein he backed into another car, the company "decided to call [him] in for some more training." (Dep. of Stephen Van Loon, at 24). Further, the allegation that Lacy himself was not aware of the safety violations is not, in itself, demonstrative of any wrong doing on the part of New Prime. Lacy testified that he does not "necessarily know of every accident . . . particularly every backing accident" (Dep. of Donald Lacy, at 19-20), and there is no indication that his knowledge of every accident was required. Therefore,

---

[1] In fact, Defendants repeatedly admit to a breach of the duty of care. (*See generally* Docs. 36, 42).

7

Plaintiffs have failed to present any genuine issue of fact as to Defendants' assertion that New Prime did not act "in conscious disregard of a known risk of an accident on June 21, 2011, sufficient to rise to the level of outrageousness necessary to support a claim for punitive damages" (Doc. 41, ¶ 12).

Consequently, we will grant Defendants' motion for summary judgment as to Counts III and IV.

### B. Negligence – Count II

Defendants also request that the Court grant them summary judgment on Count II (Negligence by New Prime). Specifically, Defendants argue that "the claim for negligent entrustment, training, hiring, retention, and supervision is redundant where agency is admitted." (Doc. 42, at 6). Because New Prime admits that, at the time of the accident, (1) Van Loon was acting in furtherance of its business; (2) New Prime is therefore vicariously liable for Van Loon's actions; and (3) Van Loon breached his duty of care; Defendants state that "the independent claim or [sic] negligence against New Prime, Inc. is redundant because any recovery awarded shall be paid by the same source, namely New Prime, Inc." (Doc. 42, at 6).

"As a general rule, courts have dismissed claims for negligent supervision and negligent hiring when a supervisor defendant concede[s] an agency relationship with the co-defendant." Fortunato v. May, 2009 WL 703393, at *5 (W.D. Pa. Mar.16, 2009); see also Sterner v. Titus Transp., LP, 2013 WL 6506591, at *3 (M.D. Pa. Dec. 12, 2013) (("In the

8

majority of states that have addressed this issue, a plaintiff cannot pursue a claim against an employer for negligent entrustment, hiring, supervision, or training when the employer admits that its employee was acting within the scope of employment when the accident occurred") (collecting cases)). This rule is subject to exception "when a plaintiff has a valid claim for punitive damages." *Sterner*, 2013 WL 6506591, at *3. The rationale for Courts to dismiss negligent supervision, entrustment, retention, training, and hiring claims, absent a viable punitive damages claim, is that "[n]othing can be gained from [the negligence claim] when the defendant employer has admitted the agency of the driver, and to permit the action to proceed on both counts would allow the introduction of evidence of prior accidents of the driver, highly prejudicial, irrelevant and inadmissable in the cause of action based on the imputed negligence of the driver." *Allen v. Fletcher*, 2009 WL 1542767, at *4–5 (quoting *Holben v. Midwest Emery Freight Sys., Inc.*, 525 F.Supp. 1224, 1224-1225 (M.D.Pa. 1981)).

As such, federal district courts in Pennsylvania have nearly unanimously declined to permit:

> claims for negligent entrustment, supervision, monitoring, and hiring to proceed when (1) the supervisor/employer defendant admits that its employee was acting in the scope of his or her employment at the time of the accident, *and* (2) the plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant.

*Sterner*, 2013 WL 6506591, at *4 (emphasis in original).

Defendants rely on *Holben* in support of the proposition that "since agency is admitted, any evidence of negligent hiring, retention, supervision, training and entrustment

9

is immaterial, irrelevant and highly prejudicial." (Defs.' Brief in Supp., Doc. 36, at 10-11). We agree with Plaintiffs that *Holben* is distinguishable from the present case. Further, we do not agree that a determination regarding whether the evidence at issue is highly prejudicial should be decided at the summary judgment stage. However, *Holben* is useful to the extent that it demonstrates why, here, Plaintiffs cannot survive summary judgment. In *Holben*, on a motion for summary judgment, the Court found genuine issues of material fact surrounding the claim for punitive damages against the defendant company, and that "it is as much an issue of fact whether [the defendant company's] conduct constitutes such indifference to the consequences as to merit punitive damages as it is a question of whether it constitutes negligence." *Holben*, 525 F.Supp. at 1225. Nevertheless, the Court stated that "[w]ere it not for the punitive damages claim we would strike the 'negligent entrustment' cause of action." *Id.* at 1224.

In opposition to Defendants' reliance on *Holben*, and other case law purportedly standing for the proposition that where a defendant corporation admits vicarious liability, direct claims are precluded, Plaintiffs rely on *Burke v. TransAm Trucking, Inc.*, 605 F.Supp.2d 647 (M.D.Pa. 2009). In *TransAm Trucking*, the defendant made similar arguments to those of New Prime with respect to negligent entrustment, supervision, and control. *TransAm Trucking*, 605 F.Supp.2d at 657-658. The Court found that Plaintiffs' punitive damages claims against the driver of the tractor-trailer and his employer were sufficient to survive summary judgment and that while the company admitted the driver "was

its employee and was driving the tractor trailer in the course and scope of his employment at the accident, they do not accept responsibility for the accident." *Id.* at 658.

Defendants are not seeking summary judgment on Plaintiffs' claim of negligence on the part of Van Loon (Count I). (*See generally,* Doc. 35). Therefore, Plaintiffs' opposition to Defendants' motion for summary judgment on Count II requires the presence of evidence to support allegations other than those related to Van Loon's conduct. The Calhouns do not put forth sufficient facts to support such a claim. The only alleged facts by Plaintiffs not specifically relating to the events of June 21, 2011, and the actions of Van Loon, are that (1) Van Loon did not receive additional safety training and was not removed from employment, "even though he had two . . . accidents within ten days"; and (2) that Lacy "was not even aware of [Van Loon's] safety violations" (Pls.' Ans. to Stat. of Facts, Doc. 43, ¶¶ 12, 14). As previously discussed, Plaintiffs have not come forward with evidence that Lacy should have been aware of the safety violations.[2] Nonetheless, the adequacy and extent of Van Loon's training are arguably separate and distinct from allegations of negligence on the part of Van Loon. However, in the absence of any other facts to support a negligence claim other than those related to Van Loon's conduct, under the rationale of *Holben* and subsequent case law, the negligence claim asserted against New Prime is sufficiently redundant to warrant summary judgment on Count II in favor of the defendants. Our ruling would likely be

---

[2] Lacy testified that the company has 6,000 drivers, approximately 5,000 "trucks on the road", and that he does not "necessarily know of every accident . . . particularly every backing accident." (Dep. of Donald Lacy, at 12, 19-20). Plaintiffs have not provided a company policy, or other similar evidence, stating that Lacy must be aware of each accident.

11

different had the record shown evidence that would support a claim for negligent entrustment, training, hiring, retention, and supervision, based on the actions or omissions of New Prime other than those attributed to it under the doctrine of *respondeat superior* which are also the actions or omissions of Defendant Van Loon in this case.

Unlike *Holben* and *TransAm Trucking*, where the Courts allowed Defendants' punitive damages claims to go forward, here, we are granting summary judgment on both punitive damages counts. Additionally, because New Prime admits that, at the time of the accident, Van Loon was acting in furtherance of its business, rendering New Prime vicariously liable for Van Loon's actions, and that Van Loon breached his duty of care,[3] *TransAm Trucking* is distinguishable. Here, Defendants are accepting responsibility for the accident, and as previously discussed, there are not "genuine issues of material fact regarding [the corporate defendant's] own actions in this case", *TransAm Trucking*, 605 F.Supp.2d at 658, such as to create an issue of fact regarding the extent of New Prime's liability separate from Van Loon's. In light of the immediately aforementioned grounds for our ruling, Defendants will be estopped at trial from asserting a position that is contrary to the admissions made in their Answer, Brief in Support of Partial Summary Judgment, and Reply Brief (Docs. 11, 36, 42); specifically, that Van Loon was acting within the scope of his

---

[3] Defendants make this contention in both their Brief in Support of Partial Summary Judgment and their Reply Brief (Docs. 36, 42). In support of these statements, Defendants' Answer states that "defendants admit that Van Loon was an agent of New Prime, Inc. d/b/a Prime, Inc. and was acting within the furtherance of the business of New Prime, Inc. d/b/a Prime, Inc. at the time of the June 21, 2011 accident." (Doc. 11, ¶ 4). Additionally, Van Loon admitted that he "should have gotten out and looked and made sure that that was an empty space instead of one occupied." (Dep. of Stephen Van Loon, at 25).

employment, that his actions breached the applicable duty of care, and that New Prime stands responsible for Van Loon's conduct and any damages stemming therefrom.

Consequently, the Court will grant Defendants' motion for summary judgment with respect to Count II.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Partial Summary Judgment. (Doc. 35). A separate Order follows.

Robert D. Mariani
United States District Judge